UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LAWRENCE U. DAVIDSON, III,                :
                                          :
         Plaintiff,                       :
                                          :        Civil Action No.:      14-1358 (RC)
         v.                               :
                                          :        Re Document No.:    25
UNITED STATES DEPARTMENT OF               :
STATE, *et al.*,                          :
                                          :
         Defendants.                      :

## MEMORANDUM OPINION

### GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiff Lawrence U. Davidson, III, *pro se*, is the sole proprietor of Export Strategic Alliance, a company that seeks to collect on an allegedly unpaid invoice for services it rendered to Libya's former government. Mr. Davidson claims that he asked Defendant the United States Department of State to help him collect on that invoice, to no avail. He then submitted Freedom of Information Act (FOIA) requests to the Department and sought information about how the Department had handled Mr. Davidson's previous communications with the Department. Dissatisfied with the Department's processing of his FOIA requests, Mr. Davidson filed this suit.

The Department now moves for summary judgment on Mr. Davidson's FOIA claims. Mr. Davidson has, however, raised a genuine issue of material fact with respect to the adequacy of the Department's search. And the Department's Vaughn Index does not allow the Court to assess the propriety of all of its withholdings. Accordingly, the Court will deny the Department's motion in part. But because no genuine issue of material fact exists to indicate that, for the

documents listed in the Department's Vaughn Index, the Department's FOIA withholdings were

improper, the Court will grant the Department's motion with respect to those withholdings.

## II.  BACKGROUND[1]

### A.  Non-FOIA Communications

Plaintiff Lawrence U. Davidson, III, is a United States citizen and the sole proprietor of

Export Strategic Alliance, a company that allegedly contracted with the Great Socialist Peoples

Libya Arab Jamahiriya, Libya's former government. Compl. ¶ 7, ECF No. 1; Def.'s Statement of

Undisputed Material Facts ¶¶ 1–2, ECF No. 25-1 [hereinafter Defs.' Statement].[2] Mr. Davidson

---

[1] Mr. Davidson's complaint alleges both FOIA and non-FOIA claims, *see* Compl. 11–15, ECF No. 1, but the Court has already dismissed Mr. Davidson's non-FOIA claims. *See Davidson v. U.S. Dep't of State*, 113 F. Supp. 3d 183, 197 (D.D.C. 2015); Order, ECF No. 19. Here, therefore, the Court recounts only facts relating to Mr. Davidson's FOIA claims.

Unless otherwise indicated, the Court includes only undisputed facts: facts from Mr. Davidson's complaint that the Department did not dispute, and facts from the Department's statement of undisputed material facts that Mr. Davidson did not dispute. *See* Answer 4–5, ECF No. 8 (admitting many of Mr. Davidson's allegations relating to his FOIA claims); Mem. Opp'n Mot. Summ. J. 1–2, ECF No. 28 [hereinafter Pl.'s Opp'n] (failing to directly dispute the Department's statement of undisputed material facts).

The Court agrees with the Department that, under a strict interpretation of this Court's local civil rules, Mr. Davidson has conceded the facts alleged in the Department's statement because he neither responds to the Department's statement of facts nor buttresses his own statement of facts with record citations. *See* D.D.C. Civ. R. 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."); Defs.' Reply Supp. Mot. Summ. J. 2–3, ECF No. 29 [hereinafter Defs.' Reply]. But because "[a] document filed *pro se* is to be liberally construed," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation mark omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and because the Court "must always determine for itself whether the record and any undisputed material facts justify granting summary judgment," *Grimes v. District of Columbia*, 794 F.3d 83, 95 (D.C. Cir. 2015) (quoting *id.* at 97 (Griffith, J., concurring)), the Court will still conduct an independent analysis of the record to determine whether the Department's statement of facts is accurate.

[2] *See generally Great Socialist People's Libyan Arab Jamahiriya v. Miski*, 683 F. Supp. 2d 1, 3 (D.D.C. 2010) (discussing a suit that the former Libyan government, suing under the name "the Great Socialist People's Libyan Arab Jamahiriya," brought in this Court); CIA, *The*

claims that, under a contract between his company and the Jamahiriya, his company would have delivered the Jamahiriya medicine valued at seventy million dollars, as well as twelve million metric tons of foodstuffs valued at four and a half billion dollars. Compl. ¶ 7; Defs.' Statement ¶ 2. He further claims that, after he provided twenty-eight million dollars in services, the Jamahiriya never paid his company for the outstanding invoice. Compl. ¶ 7; Defs.' Statement ¶ 2.

According to Mr. Davidson's complaint, on or around November 8, 2011, Mr. Davidson began collection efforts on his company's invoice by submitting copies of the invoice to various Libyan governmental entities, including the Libyan embassy in Washington, D.C. Compl. ¶ 23. Those efforts, however, proved unsuccessful: according to Mr. Davidson, "[o]ther than electronic acknowledgment of receipt of the invoice, no . . . communications were received" from the government officials that Mr. Davidson contacted. *Id.*

On or around September 1, 2012, Mr. Davidson sought assistance from officials at Defendant the United States Department of State. Compl. ¶ 24; Defs.' Statement ¶ 2. According to Mr. Davidson's complaint, he contacted many individual Department officials and asked them for "'commercial diplomacy' or in the alternative a 'Letter d'Marche,'" a formal diplomatic communication. Compl. ¶ 26.[3] Like his efforts to obtain payment from Libya, Mr. Davidson claims that his efforts to obtain assistance from the Department were also unsuccessful. *See*

---

*World Factbook: Libya*, https://www.cia.gov/library/publications/the-world-factbook/ geos/ly.html (open "Introduction" tab) (last visited Sept. 2, 2016) (explaining that, after a civil war erupted, the former Libyan government "was toppled in mid-2011"); Compl. ¶ 23 (alleging that Mr. Davidson provided services to "the defunct/predecessor government of the Republic of Libya").

[3] *See generally* Foreign Serv. Inst., U.S. Dep't of State, *Protocol for the Modern Diplomat* 30 (2013), http://www.state.gov/documents/organization/176174.pdf (defining "demarche" as "a request or intercession with a foreign official, e.g., a request for support of a policy, or a protest about the host government's policy or actions").

Compl. ¶¶ 24–35 (alleging that "[t]he vast majority of [Mr. Davidson's] telephone calls went

unacknowledged or returned").

### B. FOIA Requests

In 2013, Mr. Davidson tried a third strategy: FOIA requests. Mr. Davidson submitted his

first FOIA request to the Department in October 2013. Compl. 14, ¶ 52; Defs.' Statement ¶ 3; *see*

*also* Answer Ex. 1, ECF No. 8-1, at 1–2 (reproducing Mr. Davidson's first FOIA request).[4] In his

request, which he titled "Privacy Act/Freedom of Information Request," Mr. Davidson sought

> all documents or communications of all such character whether e-mail,
> memorandums, meeting agendas, transcripts, investigations, notes either received
> or submitted wherein the issue either specifically or by implication is Lawrence
> U. Davidson, III d/b/a Export Strategic Alliance held in the United States State
> Department for the period beginning June 30, 2009.

Answer Ex. 1, ECF No. 8-1, at 1. Mr. Davidson also noted that his request placed "particular

emphasis" on certain records: (1) "[i]nvestigations conducted by the Bureau of Diplomatic

Security," (2) "[c]onsular [a]ssistance given to U.S. [c]itizens in Libya," and (3) communications

with or from certain entities that mentioned Mr. Davidson or his company in their text. *Id.* For

the third category, Mr. Davidson named the entities whose communications he sought: the

American embassy in Libya, as well as numerous named individuals. *See id.*, ECF No. 8-1, at

1–2.[5] The Department responded soon after, but with simply a form letter informing

Mr. Davidson that the Department could not process his request because he had not "provided

identifying information," such as names, dates of birth, and "citizenship status for all parties

---

[4] Because the Department filed the exhibits attached to its answer in one continuous
document, the Court cites to the page numbers automatically generated by ECF.

[5] The named individuals were Nat Mason, Christopher Wilkens, Alyce N. Abdalla, Lydia
Sizer, Evyenia Sideras, Kimberly Bell, Anne Slack, A.C. Wilson, S.T. Grigola, Donald
Yamamoto, Linda Thomas-Greenfield, William Roebuck, Gene Cretz, F.A. Hamidan, and
Hannah A. Draper. *See* Answer Ex. 1, ECF No. 8-1, at 1–2.

associated with [his] request." *See* Compl. ¶ 53; Defs.' Statement ¶ 4; *see also* Answer Ex. 2,

ECF No. 8-1, at 3 (reproducing the Department's response).

Mr. Davidson submitted a second, nearly identical FOIA request in November 2013. *See*

Compl. ¶ 54; Defs.' Statement ¶ 5; *see also* Answer Ex. 3, ECF No. 8-1, at 4–5 (reproducing

Mr. Davidson's second FOIA request). This time, though, Mr. Davidson specified that he was

"an American Citizen" and indicated that the named individuals whose communications he

sought were also "upon information [and] belief . . . American Citizens." *See* Answer Ex. 3, ECF

No. 8-1, at 4. But the Department issued Mr. Davidson an identical response: it told him that it

could not process his request for lack of "identifying information." *See* Compl. ¶ 55; Defs.'

Statement ¶ 6; *see also* Answer Ex. 4, ECF No. 8-1, at 6 (reproducing the Department's second

response).

Mr. Davidson alleges that, when he sent the Department his two FOIA requests, he also

sent copies of his requests to the Department's Office of Inspector General (OIG). *See* Compl.

14–15, ¶¶ 52, 56; *see also* Answer Ex. 6, ECF No. 8-1, at 10 (responding, in a letter from OIG to

Mr. Davidson, to Mr. Davidson's "FOIA . . . request dated October 15, 2013"). Unlike the

Department itself, OIG did not respond to Mr. Davidson's FOIA request by refusing to process

Mr. Davidson's request for lack of identifying information. Instead, the record shows that, on

November 15, 2013, OIG issued Mr. Davidson a letter, which stated that OIG had "conducted a

thorough and reasonable search" and had "found no records responsive to the portion of [his]

request for documents pertaining to [him] or [his] business for the period beginning June 30,

2009." Answer Ex. 6, ECF No. 8-1, at 11. With a letter dated January 7, 2014, Mr. Davidson

appealed OIG's decision to the Chairman of the Appeals Panel of the Department of State. *See*

Compl. 15, ¶ 49; Answer 5, ¶ 49; *see* Answer Ex. 7, ECF No. 8-1, at 9 (reproducing

Mr. Davidson's appeal letter). In his appeal letter, "to establish an error" and to establish that

responsive documents "did in fact exist," Mr. Davidson alleges that he included an example of a communication between himself and the Department. Compl. 15–16, ¶ 49; *see* Answer Ex. 7, ECF No. 8-1, at 9 (stating that Mr. Davidson attached an "Example of Transmission submitted to State Department persons" with his appeal letter).

At some point afterward, the Department opened a new FOIA request for Mr. Davidson. *See* Compl. 15–16, ¶ 49; Answer 4–5, ¶¶ 49, 56. Mr. Davidson implies that the Department's decision to open another request resulted from his appeal of OIG's decision. *See* Compl. 15–16, ¶ 49 (explaining that "a new case was opened" after Mr. Davidson submitted his sample communication as "evidence that documents did in fact exist"). But the Department contends that "it re-opened [Mr. Davidson's] FOIA case" because Mr. Davidson submitted a third FOIA request, and that the Department's subsequent processing of any potentially responsive documents applied only to non-OIG records. Answer 4–5, ¶ 56; *id.* at 5, ¶ 49. And the Department has produced a copy of a "resubmission" of Mr. Davidson's FOIA request, which is dated February 20, 2014. *See* Answer Ex. 5, ECF No. 8-1, at 7–8. That request is nearly identical to Mr. Davidson's November 2013 FOIA request: it includes the same text as the November 2013 request, but adds two individuals' names to the list of named individuals whose communications Mr. Davidson sought. *Compare id.* (including Wendy Sherman and Carlos Dejuana in the list of named individuals), *with* Answer Ex. 3, ECF No. 8-1, at 4–5 (reproducing the November 2013 request). The Department asserts that it acknowledged receipt of Mr. Davidson's third request by letter, that it initiated searches in response to his request, and that in May 2014 it provided an estimated completion date of December 2015. Defs.' Statement ¶¶ 10–11; *see also* Compl. 15–16, ¶ 49 (agreeing that Mr. Davidson received a December 2015 estimated completion date).

### C. Procedural History

Mr. Davidson filed suit in this Court in August 2014. *See* Compl. After recounting the history of his FOIA-related communications with the Department, Mr. Davidson's complaint asked the Court to "[i]ssue a declaratory judgment directing the State Department to comply with [his FOIA] request in a timely manner." *See* Compl. 14–16. After the Department asserted in October 2015 that it had completed its production of responsive documents, it filed a motion for summary judgment, which is now before the Court. *See* Joint Status Report 1, ECR No. 23; Def.'s Mot. Summ. J., ECF No. 25.

The Department states that, of the 157 responsive records that it retrieved in response to Mr. Davidson's FOIA request, "34 were released in full, 100 were released in part, and 23 were withheld in full." Defs.' Statement ¶ 45. To justify its withholdings, the Department invokes FOIA Exemptions 5 and 6, *see* 5 U.S.C. § 552(b)(5), (6), as well as Exemption (d)(5) under the Privacy Act of 1974, *see id.* § 552a(d)(5) (denying individuals access to "information compiled in reasonable anticipation of a civil action or proceeding"). *See generally* Def.'s Mem. P. & A. Supp. Mot. Summ. J. 13–24, ECF No. 25 [hereinafter Defs.' Mem.] (invoking the three exemptions).

During the course of briefing on the Department's motion for summary judgment, the Department asserts that it discovered two additional responsive documents and released both documents in part to Mr. Davidson. *See* Defs.' Reply Supp. Mot. Summ. J. 5–7, ECF No. 29 [hereinafter Defs.' Reply]; Stein Decl. ¶ 27, ECF No. 29-1. As with the original 157 responsive records, the Department invokes FOIA Exemption 5, FOIA Exemption 6, and Privacy Act Exemption (d)(5) to justify its withholdings with respect to the two additional documents, and makes the same arguments in doing so. *Compare* Defs.' Mem. 13–24 (alleging withholdings of information "compiled in the reasonable expectation of civil litigation," information subject to

"civil discovery privileges," information subject to the deliberative process privilege, and employee names and contact information), *with* Defs.' Reply 5–7 (same).[6]

In response, Mr. Davidson (1) contends that the Department's search for responsive documents "fail[ed] to account" for certain potential sources of responsive records, *see* Mem. Opp'n Mot. Summ. J. 2, ECF No. 28 [hereinafter Pl.'s Opp'n]; (2) challenges the Department's withholdings under FOIA Exemptions 5 and 6, *see id.* at 2–8; and (3) accuses the Department of harboring an "intent not to be compliant with FOIA," *id.* at 8. The Court reviews the applicable legal standard before analyzing the merits of the parties' positions.

## III.  LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for

---

[6] Although the Department explicitly stated that it "has no objection" to Mr. Davidson filing a sur-reply with respect to the two documents produced after the Department filed its motion for summary judgment, *see* Defs.' Reply 5 n.1, Mr. Davidson has not done so. For this reason, and because the Department asserts the same arguments for both its original production and for the two additional documents, the Court will analyze the Department's FOIA compliance for both productions under the same overall analysis.

trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial

burden of identifying portions of the record that demonstrate the absence of any genuine issue of

material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant

must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See*

*Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew

making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360,

363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most

favorable to the non-movant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions

offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v.*

*Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

When assessing a summary judgment motion in a FOIA case, a court makes a *de novo*

assessment of whether the agency has properly withheld the requested documents. *See* 5 U.S.C.

§ 552(a)(4)(B); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95

(D.D.C. 2009). To prevail on a motion for summary judgment, "the defending agency must

prove that each document that falls within the class requested either has been produced, is

unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S.*

*Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting

*Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). To meet its burden, a

defendant may rely on declarations that are reasonably detailed and non-conclusory. *See Citizens*

*for Responsibility & Ethics in Wash. v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C.

2007) ("[T]he Court may award summary judgment solely on the basis of information provided

by the department or agency in declarations when the declarations describe 'the documents and

the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by

either contrary evidence in the record nor by evidence of agency bad faith.'" (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981))). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). Generally, a reviewing court should "respect the expertise of an agency" and not "overstep the proper limits of the judicial role in FOIA review." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## IV.  ANALYSIS

### A.  Adequacy of the Search

The Department contends, as an initial matter, that it conducted an adequate search for responsive records. *See* Defs.' Mem. 8–9. And indeed, the Department's submissions show that it searched multiple offices and records systems within the Department: the Central Foreign Policy Records, the Bureau of Near Eastern Affairs, the Bureau of Diplomatic Security, the Bureau of Economic and Business Affairs, the Office of Overseas Citizen Services, the Office of Information Programs and Services, the Office of the Legal Adviser, and the Office of the Under Secretary of Political Affairs. *See* Hackett Decl. ¶¶ 15–49. For almost all of these offices and records systems, the Department has described the files that it searched and (for electronic searches) the search terms that it used. *See id. But see id.* ¶ 23 (lacking a description of search terms that a former embassy official used to search a "thumb drive" of records carried over from the former U.S. Embassy in Tripoli, Libya).

Although the Department argues that Mr. Davidson "fails to directly address the adequacy of the search" and that the Court should therefore decide this issue in the Department's favor, *see* Defs.' Reply 3, Mr. Davidson's opposition brief indicates his belief that the

Department conducted an inadequate search. For instance, Mr. Davidson contends that the

Department's search did not account (1) "for records held at the American Embassy in Libya

under . . . then[-]Ambassador[] Gene Cretz such as [a] daily diary"; (2) for "communications

with embassy staff"; (3) "for records instituting and responsive to an investigation by the F.B.I.

Special Agent R. Godfrey"; and (4) for "passport activity." Pl.'s Opp'n 2. And when

Mr. Davidson recounts reasons why he believes that the Department had an "intent not to be

compliant with FOIA," he asserts that the Department conducted a search using "[l]imited

parameters." *Id.* at 8, ¶ 8. To be sure, Mr. Davidson did not preface his statements with headings

that would alert the Department to his position on the adequacy of its search for responsive

documents. *See id.* at 2, 8. But in light of Mr. Davidson's affirmative opposition to the

Department's position, the Court will not deem this issue conceded. Accordingly, the Court

summarizes the governing legal principles before engaging with the parties' arguments.

   Under FOIA, an adequate search is one that is "reasonably calculated to uncover all

relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation

mark omitted) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir.

1983)). The agency does not have to search "every record system" for the requested documents,

but it "must conduct a good faith, reasonable search of those systems of records likely to possess

the requested records." *Marino v. Dep't of Justice*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citing

*Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). When an agency seeks

summary judgment on the basis that it conducted an adequate search, it must provide a

"reasonably detailed" affidavit describing the scope of that search. *Iturralde v. Comptroller of*

*the Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting *Valencia–Lucena v. U.S. Coast*

*Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)). It is not enough, however, for the affidavit to state

in conclusory fashion that the agency "conducted a review of [the files] which would contain

information that [the plaintiff] requested" and did not find anything responsive to the request. *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 370 (D.C. Cir. 1980). On the other hand, once the agency has provided a "relatively detailed" affidavit describing its search, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley*, 508 F.3d at 1116 (internal quotation marks omitted) (first quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978); then quoting *Founding Church of Scientology of Washington, D.C., Inc. v. NSA*, 610 F.2d 824, 836 (D.C. Cir. 1979)).

Here, the Department has provided a declaration that shows an organized and thorough search of several of its offices and records systems. *See* Hackett Decl. ¶¶ 13–49. For each office or record system, the Department's declaration explains who conducted the search and the specific databases searched. *See id.* And for almost all of the electronic searches, the declaration identifies the search terms used. *See id.* (noting search terms such as "Davidson" and "Export Strategic Alliance"). For almost all of the searches that the Department did conduct, therefore, the Department's declaration suffices to provide a "relatively detailed" account of the scope of its search.

But Mr. Davidson's dissatisfaction rests not with the searches that the Department conducted, but with the searches that the Department *did not* conduct. *See* Pl.'s Opp'n 2 (taking issue with the Department's search, because it "failed to account" for certain embassy records, for records corresponding to an FBI investigation, and for passport activity). His concern is legally cognizable, for "two issues" concern the Court when assessing the reasonableness of an agency's search: first, whether the agency adequately searched the files that it did search; and second, whether the agency presented an adequate justification for not searching other files. *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 891 (D.C. Cir. 1995). To that end, an

agency must construe FOIA requests liberally and "cannot limit its search to only [some] record system[s] if there are others that are likely to turn up the information requested." *Id.* at 890 (internal quotation marks omitted) (quoting *Oglesby*, 920 F.2d at 68). When a plaintiff raises the issue of files that the agency does not search, the agency must "fill" the "gap" to "carry its burden as to the adequacy of its search": it should inform the court and the plaintiff of "[1] whether [other records systems] of any potential relevance exist; [2] if so whether their responsive material is reasonably likely to add to that already delivered, and [3] if these questions are answered affirmatively, whether there is any practical obstacle to searching them." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514–15 (D.C. Cir. 2011). "At the very least," the agency should "explain in its affidavit that no other record system was likely to produce responsive documents." *Oglesby*, 920 F.2d at 68. Without such an explanation, and even if the Court can make "reasonable guesses about the answers to these questions," the Court cannot award the agency summary judgment on the adequacy of its search. *Negley v. FBI*, 169 F. App'x 591, 595 (D.C. Cir. 2006).

In its reply, the Department bypasses Mr. Davidson's concerns and argues simply that its search was adequate even if Mr. Davidson "did not receive a legal opinion" from the Department. Defs.' Reply 4. But that response does not address (1) whether other records systems of potential relevance exist, (2) whether any such records systems would be "reasonably likely to add to that already delivered," or (3) whether "there is any practical obstacle to searching them." *Coin Collectors*, 641 F.3d at 515. And though the Department's declarations do state that "no other offices or records systems were reasonably likely to maintain documents responsive to [Mr. Davidson's] request," the Department's bald statements do not *explain* why no other record system was likely to produce responsive documents. *See* Hackett Decl. ¶ 15; Stein Decl. ¶ 2, ECF No. 29-1; *cf. Oglesby*, 920 F.2d at 68 (explaining that the agency is

"required to *explain* in its affidavit that no other record system was likely to produce responsive

documents" (emphasis added)). Although the Department need not demonstrate "that no other

relevant documents could possibly exist," *Oglesby*, 920 F.2d at 68 (citing *Perry v. Block*, 684

F.2d 121, 128 (D.C. Cir. 1982)), it must "revise its assessment of what is [a] 'reasonable'

[search] in a particular case to account for leads that emerge during its inquiry," *Campbell v. U.S.

Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). Thus here, because Mr. Davidson identified

other potential sources of responsive records, *see* Pl.'s Opp'n 2, the Department must explain

why those sources would not produce additional responsive records (or report that a "practical

obstacle" impedes a search of those sources), *see Coin Collectors*, 641 F.3d at 515. Because the

Department has not done so, *see* Defs.' Reply 1–7; Hackett Decl. ¶ 15; Stein Decl. ¶ 2, the Court

must deny the Department's motion for summary judgment on the issue of the adequacy of the

Department's search for responsive records.

　　　To prevail on any renewed motion for summary judgment, the Department must address

how its search accounts for the possibility of responsive documents relating (1) to former United

States Ambassador to Libya Gene Cretz,[7] (2) to communications with staff at the United States

---

[7] To the Department's credit, its declaration does note that "the Department requested
that Ambassador [William V.] Roebuck conduct a search of his files for any documents
responsive to the subject FOIA request." Hackett Decl. ¶ 20. But Mr. Davidson contends that the
declaration "misstates the then serving Ambassador as William Roebuck, when Gene Cretz was
the ambassador." Pl.'s Opp'n 2.

　　　Upon review of the public record, the Court generally agrees with Mr. Davidson:
Mr. Cretz was the United States Ambassador to Libya during much of the time period subject to
Mr. Davidson's FOIA request. *See* Answer Ex. 5, ECF No. 8-1, at 7–8 (reproducing
Mr. Davidson's February 20, 2014 FOIA request, which seeks documents "held in the United
States State Department for the period beginning June 30, 2009"); U.S. Dep't of State, *Gene
Allan Cretz*, https://history.state.gov/departmenthistory/people/cretz-gene-allan (last visited Sept.
2, 2016) (showing that Mr. Cretz served as Ambassador to Libya from November 25, 2008 until
May 15, 2012); *cf. William V. Roebuck*, U.S. Dep't of State, http://www.state.gov/r/pa/ei/biog/
237201.htm (last visited Sept. 2, 2016) (showing that Mr. Roebuck served as Chargé d'Affaires
in Tripoli, Libya "for six months from January to June 2013"). Given this background, the
Department must address in any renewed motion for summary judgment whether a search for

Embassy in Libya,[8] (3) to an investigation conducted by "F.B.I. Special Agent R. Godfrey," and (4) to passport records. *See* Pl.'s Opp'n 2 (noting that the Department failed to account for these sources of potential records in its motion for summary judgment).[9] Because Mr. Davidson's allusion to these sources of potential records are equivalent to "leads that emerge during the

---

records relating to Mr. Cretz's time as ambassador was conducted (and, if it was not, why it was not). *See Coin Collectors*, 641 F.3d at 514–15. The Court is puzzled why the Department's reply brief did not respond to such a specific argument by Mr. Davidson.

[8] The Department's declaration did note that it conducted a search of all electronic files "carried over from the [then-closed] Embassy [in Libya]," which "were contained on one thumb drive." Hackett Decl. ¶ 23. But the declaration merely notes that "[a] former Embassy official searched the thumb drive for any records pertaining to [Mr. Davidson] and to Export Strategic Alliance and located no responsive documents." *Id.* Because of the declaration's terse explanation of its search and the record in this case, *see supra* note 7, the explanation suffers from two flaws, which the Court briefly discusses here.

First, because Mr. Davidson has identified an error in the Department's understanding of the ambassadors relevant to his FOIA request, *see id.*, the Department's error might extend also to the Department's understanding of the embassy files relevant to his FOIA request. The Department might have conceivably searched only embassy files relating to Mr. Roebuck's time as Chargé d'Affaires in Tripoli, instead of all embassy files dating back to June 30, 2009, when Mr. Gretz was the Ambassador to Libya. *See* Hackett Decl. ¶ 23 (lacking a description of which embassy files remained on the thumb drive retained from the then-closed Embassy in Libya). Any renewed motion for summary judgment should "fill" the "gap" raised by the error that Mr. Davidson identified. *See Coin Collectors*, 641 F.3d at 514–15.

Second, because the Department's description of its search of the thumb drive lacks a description of the search terms employed to locate responsive documents, the Department in this instance has not provided a "reasonably detailed affidavit" that "sets forth the search terms and the type of search performed." *Ogelsby*, 920 F.2d at 68. This omission raises "substantial doubt as to the reasonableness of [the] search" and renders summary judgment inappropriate. *Marino v. Dep't of Justice*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013). Any renewed motion for summary judgment should provide a more detailed explanation of search procedures used to locate responsive documents (if any) in embassy files. *See Ogelsby*, 920 F.2d at 68.

[9] Although Mr. Davidson does not explicitly assert that the Department failed to search documents stored with the Department's OIG, he does take issue with the fact that he received "[n]o documents responsive to [his] request directed to [the Department's] Inspector General Office." Pl.'s Opp'n 8. Any renewed motion for summary judgment should accordingly also address how the Department's search accounts for—or why it need not account for—the possibility of responsive documents in that office. *See generally* Answer 5, ¶ 49 (alleging that the Department's FOIA processing applied only to "potentially responsive records located outside of" its OIG).

inquiry," the Department must revise its search—or, at least, its justifications for the scope of its search—to address them. *Campbell*, 164 F.3d at 28.

## B. Adequacy of the Vaughn Index

Even though the Court will deny the Department's motion for summary judgment to the extent that it seeks judgment on the adequacy of its search, the Court will still proceed to analyze the parties' remaining arguments with respect to the searches that the Department did conduct. Of course, if the Department were to locate additional responsive records as a result of any additional searches, the Department would have to reassert any applicable exemptions; it may not rest on the Court's conclusions here.

Before turning to the Department's asserted exemptions, however, the Court addresses the Department's argument that it has submitted a sufficient Vaughn Index to "provide the Court with the requisite basis to grant Defendants' motion for summary judgment." Defs.' Mem. 10–11; *see* Hackett Decl. ¶¶ 63–103 (including the Department's Vaughn Index within Mr. Hackett's declaration); Stein Decl. ¶¶ 23–26 (same, within Mr. Stein's declaration). In FOIA cases, the justification for withholding information is typically contained in a declaration or affidavit, referred to as a "Vaughn Index" after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). No set formula exists for a Vaughn Index, because "the critical elements of the Vaughn index lie in its function, and not its form." *Kay v. FCC*, 976 F. Supp. 23, 35 (D.D.C. 1997). The purpose of a Vaughn Index is "to permit adequate adversary testing of the agency's claimed right to an exemption," and so the index must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 & n.9 (D.C. Cir. 1986).

Although Mr. Davidson has not opposed the Department's claim that its Vaughn Index is adequate, *see* Pl.'s Opp'n 1–8, the Court finds that the Department's Vaughn Index is deficient in

a critical way: the index does not provide the Court with a description of each of the responsive records that the Department contends that it found through its searches. *See* Defs.' Mem. 3 ("After conducting multiple searches, the State Department located 157 documents responsive to [Mr. Davidson's] request."). The Department claims that it initially "released 34 records . . . in full, [released] 100 records in part[,] and withheld the remaining 23 records in full." *Id.*; *accord* Hackett Decl. ¶ 104. But, after inspecting the Department's Vaughn Index corresponding to those records, the Court counts only 72 documents that the Department states that it released in part, *see* Hackett Decl. ¶¶ 63–95, 99–103; and only 13 documents that the Department states that it withheld in full, *see id.* ¶¶ 96–98. Nor do the numbers add up if the Court considers the number of *pages* that the Department processed, as compared to the number of *documents*. *See, e.g.*, *id.* ¶ 63–95, 99–103 (discussing 184 pages that the Department released in part).

Because of its failure to describe or address many of the records that the Department states were released in part or withheld in full, the Department's Vaughn Index does not provide the Court with descriptions that would "permit adversary testing of the [Department's] claimed right to an exemption." *Nat'l Treasury Emps. Union*, 802 F.2d at 527. The Court accordingly must deny the Department's motion for summary judgment so far as it relates to withholdings not described in its Vaughn Index. In any renewed motion for summary judgment, the Department must produce a Vaughn Index that accounts for *all* of the documents withheld in part or in full and that describes the exemptions claimed for those withholdings.

### C. Privacy Act Withholdings

To move the remaining issues in this case forward, the Court will address the Department's Privacy Act and FOIA withholdings in the context of the (perhaps inadequate) searches that it conducted, and in the context of the documents that its (incomplete) Vaughn Index describes. *See supra* Parts IV.A–B (discussing issues on which the Court must deny the

17

Department's motion for summary judgment). The Court first addresses the Department's withholdings under Privacy Act Exemption (d)(5), the only Privacy Act exemption that the Department invokes to justify any of its withholdings. *See, e.g.*, Hackett Decl. ¶¶ 64–65, ECF No. 27-1 (noting withholdings that the Department made under Privacy Act Exemption (d)(5)).

Privacy Act Exemption (d)(5) states that an agency may withhold "information compiled in reasonable anticipation of a civil action or proceeding." 5 U.S.C. § 552a(d)(5). That exemption "unquestionably" protects from disclosure "documents prepared for actions in the district courts." *Martin v. Office of Special Counsel, MSPB*, 819 F.2d 1181, 1188 (D.C. Cir. 1987). The exemption also covers documents prepared for quasi-judicial administrative proceedings, *id.*, as well as documents prepared in connection with litigation to which the agency is not a party and is only a potential party or a potential material participant, *see Mobley v. CIA*, 924 F. Supp. 2d 24, 61–62 (D.D.C. 2013). And it extends even to "the mental impressions of an attorney concerning potential testimony in an anticipated proceeding" to which the agency is not a party. *Id.* at 61.

Here, several of the Department's Exemption (d)(5) withholdings fall squarely within the exempt category of "documents prepared for actions in the district courts." *Martin*, 819 F.2d at 1188. On that ground, the Department is entitled to invoke Exemption (d)(5) to withhold (1) messages exchanged in response to "Mr. Davidson's notice of his intent to file suit against the Department," Hackett Decl. ¶ 82; (2) "discussions between a Department attorney and her clients in which she provides instructions for the preservation of documents in response to Mr. Davidson's notification of his intention to sue the Department and named Department officials in their personal and professional capacities," *id.* ¶ 97; and (3) "exchanges among Department of State employees regarding legal developments in the lawsuit filed by Mr. Davidson," *id.* ¶¶ 99–100. Likewise, the Department justifiably withheld a portion of

another document, because it contained the "mental impressions of an attorney" about anticipated litigation. *Mobley*, 924 F. Supp. 2d at 61; *see* Hackett Decl. ¶ 64 (discussing withheld information "that reveals the two-way confidential communications between an attorney and his clients that seeks legal advice regarding possible litigation").

The Department describes its other Exemption (d)(5) withholdings more generally. In some cases, the Department provides little detail about the material withheld, except to say that it is "information . . . prepared in anticipation of civil litigation." *See, e.g.*, Hackett Decl. ¶ 96. But, given the Department's descriptions of the documents at issue, the communications all had to do either with Mr. Davidson's request for commercial advocacy or with his subsequent communications with the Department about that issue. *See id.* ¶¶ 65, 68, 73–74, 77, 79–81, 84, 86–92, 94–96, 98; Stein Decl. ¶¶ 23, 25. And given what the Department has previously told the Court about the context of these communications, the Department's internal discussions resulted in the Department informing Mr. Davidson by letter that he should first exhaust his legal remedies in Libya before seeking the Department's assistance. *Davidson v. U.S. Dep't of State*, 113 F. Supp. 3d 183, 186 (D.D.C. 2015). The Department did so in part because giving Mr. Davidson additional advice might "make the Department . . . vulnerable to legal actions." *Id.* at 192. The record thus indicates that, where the Department's Exemption (d)(5) withholdings relate to Mr. Davidson's request for commercial advocacy and his subsequent communications with the Department about that issue, the withheld material involves discussion of litigation to which the Department reasonably anticipated it might become a party. The withheld material was accordingly prepared "in reasonable anticipation of a civil action or proceeding" and so the Department's Privacy Act withholdings were properly asserted under Privacy Act Exemption (d)(5). *See* 5 U.S.C. § 552a(d)(5), *Mosley*, 924 F. Supp. 2d at 61–62.

Mr. Davidson has not opposed the Department's Privacy Act withholdings. *See* Pl.'s

Opp'n 1–8. Given his non-opposition, the Court determines that no genuine dispute of fact

precludes summary judgment in the Department's favor on its Privacy Act withholdings. The

Court will accordingly grant the Department's motion for summary judgment to the extent that it

rests on the appropriateness of its currently asserted Privacy Act withholdings. The Court now

turns to the Department's FOIA withholdings.

### D.  FOIA Withholdings

Apart from the Privacy Act withholdings discussed above, *see supra* Part IV.C, the

Department invokes FOIA Exemptions 5 and 6 to justify many of its withholdings, *see* Defs.'

Mem. 14–24. Mr. Davidson opposes the Department's use of those exemptions to justify its

withholdings. *See* Pl.'s Opp'n 2–8. The Court articulates basic principles governing FOIA

withholdings before analyzing the Department's withholdings under each exemption in turn.

"Disclosure, not secrecy, is FOIA's dominant objective." *Elliott v. USDA*, 596 F.3d 842,

845 (D.C. Cir. 2010) (brackets and internal quotation marks omitted) (quoting *Dep't of the Air*

*Force v. Rose*, 425 U.S. 352, 361 (1976)). "Consistent with this purpose, agencies may withhold

only those documents or portions thereof that fall under one of nine delineated statutory

exemptions." *Id.* (citing 5 U.S.C. § 552(b)). "[T]he exemptions are 'explicitly exclusive.'" *U.S.*

*Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (quoting *Adm'r, FAA v. Robertson*,

422 U.S. 255, 262 (1975)). And it is the agency's burden to show that withheld material falls

within one of these exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *Elliott*, 596 F.3d at 845.

### 1.  Exemption 5

Where the Department's Vaughn Index describes withholdings under Exemption 5, it

invokes various privileges: attorney–client privilege, attorney work-product privilege, and

deliberative process privilege. *See* Hackett Decl. ¶¶ 64–65, 68, 73–74, 77, 79–82, 84, 86–92,

94–100; Stein Decl. ¶¶ 23–26. Although the Department frequently invokes multiple privileges for its Exemption 5 withholdings, the Department invokes the deliberative process privilege every time that it asserts a withholding under Exemption 5. *See, e.g.*, Hackett Decl. ¶¶ 64–65, 68. The Court therefore begins its Exemption 5 analysis by addressing the parties' arguments about the deliberative process privilege.[10]

Exemption 5 permits the withholding of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption protects documents "normally privileged in the civil discovery context." *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004). Thus, protected materials under Exemption 5 include materials shielded by the attorney work-product privilege and "what is sometimes called the 'deliberative process' privilege." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The deliberative process privilege covers "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 8 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).

For the deliberative process privilege to apply, a court must first determine whether the withheld materials are both "predecisional" and "deliberative." *Access Reports v. Dep't of*

---

[10] Congress recently amended FOIA. *See* FOIA Improvement Act of 2016, Pub. L. No. 114-185, 130 Stat. 538 (enacted June 30, 2016). The recent FOIA amendments remove the deliberative process privilege's applicability to records "created 25 years or more before the date on which the records were requested." FOIA Improvement Act of 2016, Pub. L. No. 114-185, § 2(2), 130 Stat. 538, 540. But because Mr. Davidson's FOIA requests seek only documents "for the period beginning June 30, 2009," that FOIA amendment does not apply here. *See* Answer Ex. 1, ECF No. 8-1, at 1 (showing language from Mr. Davidson's first FOIA request); *id.* Ex. 3, ECF No. 8-1, at 4–5 (showing language from Mr. Davidson's second FOIA request); *id.* Ex. 5, ECF No. 8-1, at 7–8 (showing language from a third FOIA request that the Department received from Mr. Davidson). And because Congress did not otherwise amend FOIA in a way that might affect the disposition of this case, the Court does not address whether any of the FOIA amendments apply retroactively.

*Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991) (internal quotation marks omitted). Materials are

"predecisional" if they are "generated before the adoption of an agency policy." *McKinley v.*

*FDIC*, 744 F. Supp. 2d 128, 138 (D.D.C. 2010) (quoting *Coastal States Gas Corp. v. Dep't of*

*Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). Materials are "deliberative" if they reflect "the

give-and-take of the consultative process," *id.* (quoting *Coastal States*, 617 F.2d at 866), "by

which the decision itself is made," *Jowett, Inc. v. Dep't of the Navy*, 729 F. Supp. 871, 875

(D.D.C. 1989) (quoting *Vaughn v. Rosen*, 523 F.2d 1136, 1144 (D.C. Cir. 1975)).

Here, the materials that the Department withheld under Exemption 5 fall into three

categories. First, the Department withheld portions of communications between Department

employees about how to handle Mr. Davidson's "request for official U.S. government

intervention and advocacy in resolving his commercial dispute with the Government of Libya,"

as well as drafts of a letter responding to that request. Hackett Decl. ¶ 64; *see* ¶¶ 65, 68, 77, 79,

81, 84, 86–92, 94–96, 98; Stein Decl. ¶¶ 23, 25. Second, the Department withheld portions of

communications that address "how to respond to Mr. Davidson's request for a letter delineating

issues discussed during a May 14, 2014 telephone conversation" and issues relating to that

request. Hackett Decl. ¶ 73; *see id.* ¶¶ 74, 80. Third, the Department withheld communications

that discuss "Mr. Davidson's notice of his intent to file suit against the Department and

Department officials" and further developments related to that suit. *Id.* ¶ 82; *see id.* ¶¶ 97,

99–100. For each instance in which it invokes the deliberative process privilege, the Department

states either that disclosure "would reveal the details of internal deliberations when Department

employees are developing a strategy for official action," *id.* ¶ 64; *see id.* ¶¶ 65, 68 (making

similar statements); or that the withholdings are necessary "to protect the free flow of comments

and ideas that occur when Department officials are formulating a strategy for official action," *id.*

¶ 73; *see id.* ¶¶ 74, 77, 79–82, 84, 86–92, 94–100 (making similar statements); Stein Decl. ¶¶ 23–26 (same).

On this record, the Court determines that the Department's Exemption 5 withholdings involve predecisional and deliberative materials for which the Department justifiably invoked the deliberative process privilege. The withheld materials, as described, are all Department communications that came before and that deliberate Department action on Mr. Davidson's request for commercial advocacy, on his request for a letter about a telephone conversation, and on his lawsuit. Indeed, where the Department discusses a document that constituted the Department's ultimate action on one of Mr. Davidson's requests, the Department does not appear to use Exemption 5 to justify any withholdings. *See* Hackett Decl. ¶ 88 (discussing "the e-mail message that conveyed a letter from Under Secretary Wendy Sherman to Mr. Davidson," and appearing to use only Exemption 6 to justify withholdings in that letter). The Department's Exemption 5 withholdings therefore fall squarely into the category of "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States*, 617 F.2d at 866. Because the deliberative process privilege protects those materials from disclosure, the Court will award the Department summary judgment on the Exemption 5 withholdings that it currently asserts in its Vaughn Index.

Mr. Davidson's arguments to the contrary do not change the Court's conclusion. Although Mr. Davidson notes correctly that "truly factual material . . . is not protected" under the deliberative process privilege, Pl.'s Opp'n 4 (citing *EPA v. Mink*, 410 U.S. 73 (1973)), the Department has already addressed that potential problem by releasing in part most of the documents for which it claims Exemption 5 withholdings. *See United Am. Fin., Inc. v. Potter*, 531 F. Supp. 2d 29, 45 (D.D.C. 2008) (citing *Mapother v. Dep't of Justice*, 3 F.3d 1533,

1539–40 (D.C. Cir. 1993)) (holding that, in the context of the deliberative process privilege, "purely factual information should be released unless its disclosure would expose the deliberative process," but explaining that the agency could still withhold deliberative portions of a document if it released segregable factual portions); Hackett Decl. ¶¶ 64–65, 68, 73–74, 77, 79–82, 84, 86–92, 94–95, 99–100 (describing documents for which the Department claims Exemption 5 withholdings but nonetheless released in part); Stein Decl. ¶¶ 23–26 (same). As for the documents withheld in full, none contains segregable "purely factual" material. *Potter*, 531 F. Supp. 2d at 45. Most of those withheld documents are "preliminary drafts" of letters in response to Mr. Davidson's request for commercial advocacy. *See* Hackett Decl. ¶¶ 96, 98. Any factual material in those drafts either (1) has already been released to Mr. Davidson in the final letter responding to his request for commercial advocacy, *see id.* ¶ 88 (describing "the e-mail message that conveyed a letter from Under Secretary Wendy Sherman to Mr. Davidson"); or (2) "would expose the [Department's] deliberative process" because it was not part of the final letter, *Potter*, 531 F. Supp. 2d at 45. And the only other document withheld in full—an e-mail exchange in which a Department attorney "provides instructions for the preservation of documents in response to Mr. Davidson's notification of his intention to sue the Department"— appears to contain strictly legal or deliberative material and no factual material. *See* Hackett Decl. ¶ 97. The record thus provides no indication that the Department failed to disclose any segregable factual material.[11]

---

[11] FOIA requires that when a document contains some information that is exempt from disclosure, any reasonably segregable information not exempt from disclosure must be released after deleting the exempt portions—unless the non-exempt portions are inextricably intertwined with the exempt portions. *See* 5 U.S.C. § 552(b); *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002). The Court "must make specific findings of segregability regarding the documents to be withheld [in full]." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). As discussed above, the Court finds that, for the few documents that the Department withheld in full, no reasonably segregable portions exist.

Next, Mr. Davidson contends that "[t]he deliberative process privilege is a qualified privilege and can be overcome by a sufficient showing of need." Pl.'s Opp'n 4 (internal quotation marks omitted) (quoting *In re Sealed Case*, 116 F.3d 550, 558 (D.C. Cir. 1997)) (citing *In re Subpoena Served upon the Comptroller of the Currency & the Sec'y of the Bd. of Governors of the Fed. Reserve Sys.*, 967 F.2d 630, 634 (D.C. Cir. 1992)). But the D.C. Circuit has expressly explained that the deliberative process privilege's characteristic of being "a qualified privilege" is "not an issue in FOIA cases." *In re Sealed Case*, 121 F.3d 729, 737 & n.5 (D.C. Cir. 1997). This is because "the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure." *Id.* at 737 n.5. Thus, the Court need not consider Mr. Davidson's argument about the deliberative process privilege being a "qualified privilege." Pl.'s Opp'n 4 (quoting *In re Sealed Case*, 116 F.3d at 558).

Mr. Davidson also attempts to bolster his position by reference to the principle that "Exemption 5 does not apply to final . . . statements of policy or final opinions that have the force of law." *Ball v. Bd. of Governors of Fed. Reserve Sys.*, 87 F. Supp. 3d 33, 49 (D.D.C. 2015) (internal quotation mark omitted) (quoting *Taxation with Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981)); *see* Pl.'s Opp'n 6 ("[E]ven privileged or opinion material must be released if failure to disclose the information would result in 'secret law.'"). But here, "there is no indication that any material was *expressly* adopted or incorporated by reference in a final opinion of the Department." *Brinton v Dep't of State*, 636 F.2d 600, 605 (D.C. Cir. 1980) (emphasis added); *see, e.g.*, Hackett Decl. ¶ 96 (describing "preliminary drafts" of letters to Mr. Davidson, but including no indication that the Department expressly incorporated these drafts into any later final opinion). Accordingly, because the Department never "expressly adopt[ed] or incorporate[d] [withheld materials] as working law," its Exemption 5 withholdings

are not "final opinions" with the force of law and are exempt from disclosure. *Brinton*, 636 F.2d

at 605. Indeed, when documents are "in the nature of legal advi[c]e" to Department of State

officials, "[t]here can be no doubt that such legal advice, given in the form of intra-agency

memoranda prior to any agency decision on the issues involved, fits exactly within the

deliberative process rationale for Exemption 5." *Id.* at 604.

    The Court need not here consider Mr. Davidson's other arguments against the

Department's Exemption 5 withholdings. Even though Mr. Davidson alludes to claims of

wrongdoing on the part of Department officials, *see* Pl.'s Opp'n 5, 7 (alleging, for instance, that

Department officials took "arbitrary and capricious" actions), the Court has already rejected

Mr. Davidson's non-FOIA claims in a previous opinion, *see Davidson v. U.S. Dep't of State*, 113

F. Supp. 3d 183, 197 (D.D.C. 2015). To the extent that they apply in the FOIA context, the Court

addresses Mr. Davidson's allusions to bad faith on the part of Department officials later. *See*

Pl.'s Opp'n 5, 8 (alleging "wrongdoing" and an "intent not to be compliant with FOIA"); *infra*

Part IV.E (discussing Mr. Davidson's allegations). And because the Department invoked the

deliberative process privilege to justify any withholding for which it also invoked the attorney

work-product privilege or attorney–client privilege, the Court need not address the parties'

arguments on those other privileges. *See* Defs.' Mem. 15–19; Pl.'s Opp'n 3–5, 7–8. Having

determined that the Department merits summary judgment on the Exemption 5 withholdings that

it describes in its Vaughn index, the Court now turns to the Department's Exemption 6

withholdings.

## 2.  Exemption 6

    For almost all of the documents for which the Department asserts withholdings, the

Department has withheld the names and personal contact information of Department employees.

*See* Hackett Decl. ¶¶ 63–94, 97–103; Stein Decl. ¶¶ 23, 25. Under Exemption 6, an agency may

withhold "personnel and medical files and similar files" when the disclosure of that information "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted the term "similar files" broadly so as "to cover detailed Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (internal quotation mark omitted) (quoting H.R. Rep. No. 1497, at 11 (1966)). Therefore, not only does the exemption protect files, "but also bits of personal information, such as names and addresses, the release of which would 'create a palpable threat to privacy.'" *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (brackets and internal quotation mark omitted) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006)). "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. U.S. Dep't of Justice*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)).

Once the agency meets this threshold determination, a court must next ask whether disclosure would compromise a "substantial" privacy interest, because FOIA requires the release of information "if no significant privacy interest is implicated." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (brackets and internal quotation marks omitted) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). This standard, however, "means less than it might seem," for a substantial privacy interest is "anything greater than a *de minimis* privacy interest." *Id*. at 1229–30.

If a substantial privacy interest exists, a court next tests whether release of such information would be a "clearly unwarranted invasion of personal privacy," *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (internal quotation

marks omitted) (quoting 5 U.S.C. § 552(b)(6)), by balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information," *Multi Ag Media*, 515 F.3d at 1228. "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (brackets and internal quotation marks omitted) (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

Here, the Department invokes Exemption 6 to withhold the names and contact information of its employees. Comprised of "bits of personal information," this information receives protection under Exemption 6. *See Prison Legal News*, 787 F.3d at 1147 (quoting *Judicial Watch, Inc.*, 449 F.3d at 152). The Court accordingly balances the employees' privacy interests with the public interest in any withheld information that would shed light on the Department's workings. *See Lepelletier*, 164 F.3d at 46. Because that knowledge would reveal "little or nothing" more about the Department's conduct than the other information released to Mr. Davidson, *see Beck*, 997 F.2d at 1493 (quoting *Reporters Comm.*, 489 U.S. at 773), and because Mr. Davidson has made no argument asserting a public interest in knowing the employees' names and contact information, *see* Pl.'s Opp'n 2, the Court determines that no public interest exists to justify disclosure of the employees' names and contact information. On that basis, the Court determines that the employees' interest in keeping that information private

outweighs any public interest in disclosure, and the Court will grant the Department's motion for summary judgment on the Exemption 6 withholdings that it asserted in its Vaughn Index.

Again, Mr. Davidson's arguments to the contrary do not change the Court's conclusion. Even if, in the context of Exemption 5 withholdings, an agency chooses to release the names of its attorneys, the agency's choice does not mean that the agency *must* release its attorneys' names; the agency can still invoke Exemption 6 to withhold the attorneys' names if the attorneys' privacy interests outweighs any countervailing public interests. *See Multi Ag Media*, 515 F.3d at 1228, 1230–31; *cf.* Pl.'s Opp'n 2 ("Of note, in issues involving Exemption 5, the name, and professional title [attorney] are specifically relevant for the exemption to apply." (brackets in original)). And though typically under the deliberative process privilege "factual material must be disclosed," the "fact/opinion" distinction does not apply in the Exemption 6 context. *Mapother v. Dep't of Justice*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (quoting *Wolfe v. Dep't of Health and Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988)); *cf.* Pl.'s Opp'n 2 (arguing that the Department's redacted names and contact information "are facts [that] are not subject to being withheld").

Finally, though Mr. Davidson claims that the Department redacted so many portions of some documents that they are now "incomprehensible," Pl.'s Opp'n 2, the Court observes that the redacted documents still allow Mr. Davidson to discern "what [his] government is up to," *Lepelletier*, 164 F.3d at 46 (internal quotation marks omitted) (quoting *Fed. Labor Relations Auth.*, 510 U.S. at 497). *See* Pl.'s Opp'n Ex., ECF No. 28, at 12 (reproducing, as an example of an "incomprehensible" document, a redacted Department document that shows correspondence between Department employees about "Export Strategic Alliance"). For instance, even with exempted information withheld, the Department's released documents allow Mr. Davidson to identify the frequency and extent of discussions held at the Department with respect to his

request for commercial diplomacy. In any event, FOIA does not require the Department to

release information that is exempt from disclosure, even if the Department's asserted exemptions

would render a released document "incomprehensible." *See generally* 5 U.S.C. § 552(b)

(containing no language that safeguards the requester's ability to interpret to his satisfaction

documents that the government produces). To the contrary, if what remains after appropriate

redactions is incomprehensible, the document need not be produced at all. *See STS Energy*

*Partners LP v. FERC*, 82 F. Supp. 3d 323, 331 (D.D.C. 2015) (explaining that agencies may

withhold documents in full when "segregable information . . . amounts to an essentially

meaningless set of words and phrases" (internal quotation mark omitted) (quoting *Mead Data*

*Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977))).

For all these reasons, the Court finds that the Department's Exemption 6 withholdings

withstand Mr. Davidson's challenge. The Court will grant the Department's motion for summary

judgment on the Exemption 6 withholdings that it asserted in its Vaughn Index.

### E.  The Department's Intent

The Court must now tie up one final loose end: Mr. Davidson's accusation that the

Department's actions show an "intent not to be compliant with FOIA." Pl.'s Opp'n 8; *see also id.*

at 5 (alleging that the Department's employees committed "wrongdoing"). In support of his

accusation, Mr. Davidson cites (1) the Department's search for documents using "[l]imited

parameters"; (2) the Department's nonproduction of documents from its OIG, from former

Libyan Ambassador Gene Cretz, relating to an FBI investigation conducted by "R. Godfrey,"

and from government officials in the United States Embassy in Libya; (3) the Department's

repeated form responses to Mr. Davidson's initial FOIA requests; and (4) the Department's

redactions on the documents that Mr. Davidson did receive. *Id.* at 8. Although the Court has

addressed some of these assertions earlier, *see supra* Parts IV.A, C–D, the Court now briefly

addresses them in the context of an argument that the Department has acted in bad faith.

In the FOIA context, allegations of bad faith can call the trustworthiness of an agency's

affidavits into doubt, *see Citizens for Responsibility & Ethics in Wash. v. U.S. Dep't of Labor*,

478 F. Supp. 2d 77, 80 (D.D.C. 2007), or may be reason to allow a plaintiff to take discovery,

when supported by evidence of agency wrongdoing, *see Landmark Legal Found. v. EPA*, 959 F.

Supp. 2d 175, 184 (D.D.C. 2013). But because Mr. Davidson has not asserted any request for

discovery, *see* Pl.'s Opp'n 1–8, the Court will not assess whether circumstances warranting

discovery exist here (discovery likely would not be justified under these circumstances). And, to

the extent that Mr. Davidson seeks to undermine the trustworthiness of the Department's

declarations and Vaughn Index, he has not cited any authority to justify that position. *See* Pl.'s

Opp'n 5, 8. He has accordingly waived that argument. *See Johnson v. Panetta*, 953 F. Supp. 2d

244, 250 (D.D.C. 2013) (explaining that the Court need not construct the parties' legal

arguments, for "perfunctory and undeveloped arguments, and arguments that are unsupported by

pertinent authority, are deemed waived"); *see also Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir.

1998) ("[A] court need not act as an advocate for *pro se* litigants . . . ."); *Sun v. D.C. Gov't*, 133

F. Supp. 3d 155, 168 n.6 (D.D.C. 2015) ("[I]t is not the Court's job to canvass the record for

documents supporting a *pro se* party's position."). Finally, as mentioned before, the Court will

not consider Mr. Davidson's allegations in the context of his mandamus and civil rights claims

against the Department, *see* Compl. ¶¶ 34–50; the Court has already dismissed those claims, *see*

*Davidson v. U.S. Dep't of State*, 113 F. Supp. 3d 183, 197 (D.D.C. 2015). Thus, because

Mr. Davidson has not otherwise tied his allegations to a request for legal relief, the Court will

address his allegations of bad faith and wrongdoing no further.

## V.  CONCLUSION

The Court determines that no genuine issue of material fact precludes summary judgment on the Department's withholdings described in its Vaughn index, and that the Department is entitled to judgment as a matter of law on those withholdings. *See supra* Parts IV.C–D. But the Department has not shown that no genuine issue of material fact exists with respect to the adequacy of its search for documents and with respect to the adequacy of its Vaughn Index. *See supra* Parts IV.A–B. For the foregoing reasons, the Department's motion for summary judgment (ECF No. 25) is **GRANTED IN PART** and **DENIED IN PART**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 2, 2016                                    RUDOLPH CONTRERAS
                                                            United States District Judge