## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| LAWRENCE U. DAVIDSON, III, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | Civil Action No.: | 14-1358 (RC) |
| v. | : | | |
| | : | Re Document No.: | 33 |
| UNITED STATES DEPARTMENT OF | : | | |
| STATE, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

*Pro se* plaintiff Lawrence U. Davidson, III is the sole proprietor of Export Strategic

Alliance, a company that attempted to collect on an unpaid invoice for services it rendered to

Libya's former government. Mr. Davidson claims that he asked Defendant, the United States

Department of State,[1] to help him collect on that invoice, but that it refused. He then submitted

Freedom of Information Act ("FOIA") requests to the Department relating to information about

how the Department had handled Mr. Davidson's previous communications with the

Department. Dissatisfied with the Department's response to his requests, Mr. Davidson brought

this suit. The Department previously moved for summary judgment, and the Court granted it in

part and denied it in part.

---

[1] Although Mr. Davidson names several defendants in his complaint, the Court refers to
them collectively as the Defendant or the Department.

The Department now renews its motion for summary judgment on Mr. Davidson's remaining FOIA claims. The Court holds that the Department conducted an adequate search of its record system. The Department has also provided an updated *Vaughn* index fully explaining its withholdings—including the forty withheld documents left unexplained in its first *Vaughn* index. Because no genuine issue of material fact remains with respect to the adequacy of the Department's search and the appropriateness of its withholdings, the Court grants the Department's motion for summary judgment.

## II. BACKGROUND[2]

### A. Factual Background

Plaintiff Lawrence U. Davidson, III, is a U.S. citizen and the sole proprietor of Export Strategic Alliance ("ESA"), a company that allegedly contracted with the former government of Libya to deliver medicines valued at $70 million and 12 million metric tons of foodstuffs valued at $4.5 billion. Compl. ¶ 7, ECF No. 1. Mr. Davidson further alleges that, in consideration for the delivery, Libya promised to pay Mr. Davidson $28 million, which remained unpaid as of the date this case commenced. *Id.*

According to the complaint, in November 2011, Mr. Davidson sought payment from the former government of Libya and its successor entities within the Temporary Financing Mechanism, the National Transitional Council/Government, and current government of Libya, as well as the Libyan Embassy in Washington, D.C., by submitting a detailed invoice via letter, fax, and email. Compl. ¶ 23. According to Mr. Davidson, he received no response. *Id.* In September

---

[2] The Court assumes familiarity with the facts and background of this case set out in its September 2, 2016 memorandum opinion. *See Davidson v. United States Dep't of State*, 206 F. Supp. 3d 178, 185–88 (D.D.C. 2016). The Court recounts the facts that are most relevant to Mr. Davidson's remaining FOIA claims.

2012, Mr. Davidson turned to the Department, hoping for assistance through diplomatic channels. Compl. ¶ 24. Mr. Davidson alleges that he submitted requests for "commercial diplomacy, or in the alternative a 'Letter d'Marche,'" which is a formal diplomatic communication. Compl. ¶ 26. Mr. Davidson further claims that his efforts to obtain assistance from the Department were also unsuccessful. *See* Compl. ¶¶ 24–35 (alleging that "[t]he vast majority of [Mr. Davidson's] telephone calls went unacknowledged or returned").

From October 2013 to February 2014, Mr. Davidson claims he submitted three nearly identical versions of his FOIA request to the Department, seeking information on how the Department had handled his previous communications with it. *See* Compl.[3] ¶ 52; *see also* Answer Ex. 1, ECF No. 8-1 at 1–2[4] (reproducing Mr. Davidson's first FOIA request); Answer Ex. 3, ECF No. 8-1, at 4 (reproducing Mr. Davidson's second FOIA request); Answer Ex. 5, ECF No. 8-1, at 7–8. In his FOIA request, Mr. Davidson sought "all documents or communications . . . wherein the issue either specifically or by implication is Lawrence U. Davidson, III d/b/a Export Strategic Alliance . . . for the period beginning June 30, 2009." Answer Ex. 1, at 1. Mr. Davidson's request also placed "particular emphasis" on certain records:

---

[3] In response to Mr. Davidson's first request, the Department responded with simply a form letter indicating that the Department could not process the request due to lack of identifying information, such as names, dates of birth, and "citizenship status for all parties associated with the request." *See* Compl. ¶ 53; Answer Ex. 2, ECF No. 8-1, at 3 (reproducing the Department's response). Mr. Davidson's second request adds that he was "an American citizen" and that the named individuals whose communications he sought were also "upon information [and] belief … American citizens." Answer Ex. 3, ECF No. 8-1, at 4. The Department then issued an identical form letter as its second response. *See* Compl. ¶ 55; Answer Ex. 4, ECF No. 8-1, at 6. Mr. Davidson's third request adds two individuals' names to the list of named individuals whose communications he sought. *Compare* Answer Ex. 5, ECF No. 8-1 at 7–8 (including Wendy Sherman and Carlos Dejuana in the list of named individuals), *with* Answer Ex. 3, ECF No. 8-1, at 4–5 (reproducing the November 2013 request).

[4] Because Defendant does not clearly separate the exhibits attached to its answer, the Court references the numbers generated by ECF.

(1) "[i]nvestigations conducted by the Bureau of Diplomatic Security," (2) "[c]onsular [a]ssistance given to U.S. [c]itizens in Libya," and (3) communications with or from certain entities that mentioned Mr. Davidson or his company in their text. *Id.* For the third category, the U.S. Embassy in Libya was among the entities whose communications Mr. Davidson sought. *See* Answer Ex.1, at 1–2.

## B. Procedural History

Mr. Davidson filed suit in this Court in August 2014, asking for monetary damages, injunctive relief directing the Department to provide "commercial diplomacy," and declaratory judgment directing the Department to comply with his FOIA request. *See* Compl. at 16–17. On July 17, 2015, this Court dismissed claims for all relief not available under FOIA. *See Davidson v. United States Dep't of State*, 113 F. Supp. 3d 183, 197 (D.D.C. 2015).

After the Department asserted that it had completed its production of responsive documents in October 2015, it filed a motion for summary judgment. *See* Def.'s Mot. Summ. J., ECF No. 25. The Court denied the Department's motion with respect to the adequacy of its search and the withholding of documents, in full or in part, the basis for which was inexplicably omitted from its first *Vaughn* index, but granted summary judgment with respect to the withholdings that were detailed in its first *Vaughn* index. *See Davidson*, 206 F. Supp. 3d at 185.

In its September 2, 2016 opinion, the Court also explained in detail the requirements that the Department must meet to prevail on any renewed motion for summary judgment. With respect to the adequacy of the Department's search, the Court stated that:

> the Department must address how its search accounts for the possibility of responsive documents relating (1) to former United States Ambassador to Libya Gene Cretz, (2) to communications with staff at the United States Embassy in Libya, (3) to an investigation conducted by "F.B.I. Special Agent R. Godfrey," and (4) to passport records.

*Davidson*, 206 F. Supp. 3d at 192 (footnote and internal citation omitted). As for the

*Vaughn* index, the Court stated that the Department must "account[] for *all* of the

documents withheld in part or in full and . . . describe[] the exemptions claimed for those

withholdings." *Davidson*, 206 F. Supp. 3d at 194.

After providing a supplemental declaration and a supplemental *Vaughn* index, the

Department renewed its motion for summary judgment, which is at issue here. *See* Def.'s

Mem. Supp. Suppl. Mot. Summ. J. ("Mot. Summ. J."), at 1–3, ECF No. 33. The

Department asserts that it located 159 documents in response to Mr. Davidson's request.

Of the 159 documents, the Department "released 34 documents in full, released 103

documents in part, and withheld 22 documents in full."[5] Def.'s Supplemental Statement of

Undisputed Material Facts ("Def.'s Suppl. Statement") ¶ 15, ECF No. 33-1; *see also*

Stein Suppl. Decl. ("Stein Suppl. Decl.") ¶ 18, ECF No. 33-2. To justify its withholdings,

the Department invokes Exemption (d)(5) of the Privacy Act of 1974, 5 U.S.C. § 552a, as

well as FOIA Exemptions 5 and 6, 5 U.S.C. §§ 552(b)(5), (6). *See* Mot. Summ. J. at 16–

26.

---

[5] In its first statement, the Department stated that it retrieved 157 responsive records, of which "34 were released in full, 100 were released in part, and 23 were withheld in full." Def.'s Statement ¶ 45; *see also Davidson*, 206 F. Supp. 3d at 187. During the course of briefing for its previous motion for summary judgment, the Department asserted that it discovered two additional responsive documents, and released both documents in part to Mr. Davidson. See Def.'s Reply Supp. Mot. Summ. J. 5–7, ECF No. 29; *see also* 206 F. Supp. 3d at 188. While preparing for the Supplemental *Vaughn* index, the Department determined that "one document (C05836852) previously denied in full could be released in part, and additional information could be released in one other document (C05836848)." Stein Suppl. Decl. ¶ 18. As the result, there are now 103 documents released in part, and 22 documents denied in full out of the 159 responsive documents, consistent with the total number listed in the Stein Supplemental Declaration. *See* Stein Suppl. Decl. ¶ 18.

In response, Mr. Davidson: (1) challenges the adequacy of the Department's search, noting that the searches limited to name or "specific parameters" were inadequate, *see* Third Mem. Opp'n Mot. Summ. J. ("Pl.'s Opp'n") at 3–4,[6] ECF No. 39, (2) objects to the *Vaughn* index on the grounds that it "does not actively follow the guidelines established in [*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)]," *see* Pl.'s Opp'n at 2; and, (3) contends that the Department's redactions under FOIA Exemption 6 "constitute[] evidence of intentional failure to comply with the F.O.I. statutory authority [sic]," *see id.* at 3. The Court reviews the legal standard for summary judgment motions in FOIA cases before evaluating the merits of the parties' arguments.

## III.  LEGAL STANDARD

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for

---

[6] Plaintiff's Opposition to Motion for Summary Judgment contains confusing page numbering. Accordingly, for the page numbers in this submission, the Court refers to the ECF page numbers, rather than the page numbers affixed by Plaintiff.

trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The movant bears the initial

burden of identifying portions of the record that demonstrate the absence of any genuine issue of

material fact. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323. In response, the non-movant

must point to specific facts in the record that reveal a genuine issue that is suitable for trial. *See*

*Celotex*, 477 U.S. at 324. In considering a motion for summary judgment, a court must "eschew

making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360,

363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most

favorable to the non-movant, *see Anderson*, 477 U.S. at 255. Nevertheless, conclusory assertions

offered without any evidentiary support do not establish a genuine issue for trial. *See Greene v.*

*Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

When assessing a summary judgment motion in a FOIA case, a court makes a *de novo*

assessment of whether the agency has properly withheld the requested documents. *See* 5 U.S.C.

§ 552(a)(4)(B); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95

(D.D.C. 2009). To prevail on a motion for summary judgment, "the defending agency must

prove that each document that falls within the class requested either has been produced, is

unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S.*

*Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting

*Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)). To meet its burden, a

defendant may rely on declarations that are reasonably detailed and non-conclusory. *See Citizens*

*for Responsibility & Ethics in Wash. v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C.

2007) ("[T]he Court may award summary judgment solely on the basis of information provided

by the department or agency in declarations when the declarations describe 'the documents and

the justifications for nondisclosure with reasonably specific detail, demonstrate that the

information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'" (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981))). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). Generally, a reviewing court should "respect the expertise of an agency" and not "overstep the proper limits of the judicial role in FOIA review." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).

## IV. ANALYSIS

### A. Adequacy of the Search

The Department contends that it conducted a reasonable and adequate supplemental search for responsive records as directed by the Court in its September 2, 2016 opinion. Mot. Summ. J. at 5. The Department's submissions show that it searched multiple record systems relating to the documents that the Court instructed it to address. *See id.* at 6–12. With respect to documents relating to former U.S. Ambassador to Libya Gene Cretz, and Mr. Davidson's communications with staff at the U.S. Embassy in Libya, the Department searched the Files of the U.S. Embassy in Tripoli, Libya, the Retired Records Inventory Management System, and the Central Foreign Policy Records. *See* Stein Suppl. Decl. ¶¶ 3–9. With respect to an alleged investigation conducted by "FBI Special Agent R. Godfrey," the Department searched the Investigative Management System ("IMS") at the Bureau of Diplomatic Security (DS). *See id.* at ¶¶ 10–11. With respect to passport records, the Department searched the Passport Information Electronic Records System ("PIERS"), the Passport Lookout Tracking System ("PLOTS"), the American Citizen Records Query ("ACRQ"), and the Travel Document Issuance System

("TDIS"). *See id.* ¶ 12 In addition, the Department also searched the Office of Inspections electronic files at the Office of Inspector General ("OIG/ISP"), and the Compliance Analysis Tracking System ("CATS") at the Office of Audits at the Office of Inspector General ("OIG/AUD"). *See id.* ¶¶ 13–17. The Department's affiant, Eric Stein, Acting Director of the State Department's Office of Information Programs, states that the searches of these locations met the Court's standards set forth in its previous memorandum opinion. Stein Suppl. Decl. ¶¶ 1–2.

In his opposition to Defendant's renewed motion for summary judgment, Mr. Davidson does not identify other locations that he believes the Department should have searched. *See generally* Pl.'s Opp'n. Instead, he argues that the searches could not possibly "trigger the documents" that he requested, because the searches were "limited to [P]laintiff's name," and that "a sterile [search]" including only "name[s] or . . . specific parameters" is inadequate, because "pseudonyms, usages in industry, familiarity, trade monikers" are often used in the "manners of speech" devised for the system.[7] Pl.'s Opp'n at 3–4. Mr. Davidson's objection comes up short.

Under FOIA, an adequate search is one that is "reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (internal quotation mark omitted) (quoting *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). The agency does not have to search "every record system" for the requested documents, but it "must conduct a good faith, reasonable search of those systems of records likely to possess

---

[7] To the extent Mr. Davidson suggests that Department officials have intentionally altered the way they refer to the subject matter at issue to evade FOIA, *see* Pl.'s Opp'n at 3–4 ("Persons familiar with the system have devised manners of speech wherein a stranger would not be able to discover documents."), he provides no evidence to support such a claim. Such a conclusory allegation does not suffice to rebut the presumption of good faith accorded to the agency's affiant. *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

the requested records." *Marino v. Dep't of Justice*, 993 F. Supp. 2d 1, 9 (D.D.C. 2013) (citing *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Agencies are only required to produce records that are "reasonably described in a written request." 5 U.S.C. §§ 552(a)(3)(A), (b); *see also Kidder v. FBI*, 517 F. Supp. 2d 17, 23–24 (D.D.C. 2008). "A request reasonably describes records 'if the agency is able to determine precisely what records are being requested.'" *Tax Analysts v. IRS*, 117 F.3d 607, 610 (D.C. Cir. 1997) (quoting *Kowalczyk v. Dep't of Justice*, 73 F.3d 386, 388 (D.C. Cir. 1996)). Thus, an agency need not venture from the clear terms of the plaintiff's request to information made relevant by aliases, pseudonyms, or any other information that requires divining the requester's intent. *See Kidder*, 517 F. Supp. 2d at 23–24 (citing *Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 64 (D.D.C. 2003)) (holding that, based on plaintiff's clear requests that only reference the name "Ahmed Abu Ali," the FBI was not required to search its records for any of Abu Ali's aliases). Furthermore, an agency is not required to search for any records that "do not mention or specifically discuss" the subject of the request. *See Rothschild v. Dep't of Energy*, 6 F. Supp. 2d 38, 40.

    When an agency seeks summary judgment on the basis that it conducted an adequate search, it must provide a "reasonably detailed" affidavit describing the scope of that search. *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 313–14 (D.C. Cir. 2003) (quoting *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999)). Once the agency has provided a "reasonably detailed" affidavit, the burden shifts to the FOIA requester to produce "countervailing evidence" suggesting that a genuine dispute of material fact exists as to the adequacy of the search. *Morley*, 508 F.3d at 1116 (internal citation and quotation marks omitted).

As a baseline matter, the Court notes that "[f]or almost all of the searches that the Department . . . conduct[ed], . . . the Department's [first] declaration suffice[d] to provide a 'relatively detailed' account of the scope of its search." *Davidson*, 206 F. Supp. 3d at 190. However, as the Court explained in its last memorandum opinion, because Mr. Davidson "raised the issue of files that the agency [did] not search," "to prevail on any renewed motion for summary judgment, the Department must address how its search accounts for the possibility of responsive documents relating (1) to former United States Ambassador to Libya Gene Cretz, (2) to communications with staff at the United States Embassy in Libya, (3) to an investigation conducted by 'F.B.I. Special Agent R. Godfrey,' and (4) to passport records." *Id.* at 191–92 (footnotes omitted).

The supplemental Stein declaration shows that the Department's latest search met the requirements set by the Court in its previous memorandum opinion. *See* Stein Suppl. Decl. ¶ 3–17. The Department's affiant identifies the offices and data systems that were chosen to be searched based on familiarity with the Department. *See generally* Stein Suppl. Decl. For each record system, the affiant explains which office or officer conducted the research and identifies the search terms used. *See id.* Taken together, as with most of the Department's previous searches, the agency has satisfied the requirement of providing a "relatively detailed" affidavit describing its search with respect to the areas identified by the Court. *See* Stein Suppl. Decl. ¶¶ 3–17, Hackett Decl. ¶¶ 13–49, ECF No. 27-1.

Mr. Davidson's arguments do not alter the Court's conclusion. Mr. Davidson argues that searches limited to his name, as stated in his request, are insufficient because "a sterile [search]" using "specific parameters" is inadequate. Pl.'s Opp'n at 3. This argument is without merit. "[K]eyword searches in response to FOIA requests are routine." *Freedom Watch, Inc. v. Nat'l*

*Sec. Agency*, 220 F. Supp. 3d 40, 45 (D.D.C. 2016). And as noted above, an agency is under no obligation to search its records for information such as aliases, unless that information is specifically requested. *See Kidder*, 517 F. Supp. 2d at 23–24. Furthermore, an agency is not required to search for any records that "do not mention or specifically discuss" the subject of the request, nor is it required to divine Mr. Davidson's intent when he submitted the request. *See Rothschild v. DOE*, 6 F. Supp. 2d 38, 40; *see also Landmark Legal Found.*, 272 F. Supp. 2d at 64. The Department was thus justified in limiting its search to "specific parameters"—like Mr. Davidson's name—based on Mr. Davidson's request. Because the Department has conducted an adequate search of its records, the Court will enter summary judgment in its favor with respect to the adequacy of its search.

## B. Adequacy of the *Vaughn* index

In denying the Department's previous motion for summary judgment with respect to several of its withholdings, the Court found that the Department failed to justify many of its withholdings in its first *Vaughn* index. *See Davidson*, 206 F. Supp. 2d at 193–94. The Department argues that its supplemental declaration and supplemental *Vaughn* index "provide the Court with the requisite basis to grant Defendant['s] motion for summary judgment." Mot. Summ. J. at 14. In his opposition, Mr. Davidson seems to argue that Defendant did not support its withholdings with adequate specificity.[8]

---

[8] Mr. Davidson also suggests that Defendant's redactions of names under Exemption 6 "constitutes evidence of intentional failure to comply with [FOIA's] statutory authority." Pl.'s Opp'n at 3–4. This argument is unsupported and illogical. Exemption 6 is a lawful exemption to FOIA's usual requirement of disclosure; the use of such an exemption cannot constitute evidence of failure to comply with the same law within which the exemption is contained. Under Plaintiff's reasoning, no agency could ever invoke Exemption 6. Particularly in light of the presumption of good faith accorded to agency affiants, *see SafeCard Servs., Inc. v. SEC*, 926 F.2d at 1200, the Court need not address this argument further.

In FOIA cases, the justification for withholding information is typically contained in a declaration or affidavit, referred to as a "*Vaughn* index," named after the case of *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973). No set formula exists for an adequate *Vaughn* index, because "the critical elements of the *Vaughn* index lie in its function, and not its form." *Kay v. FCC*, 976 F. Supp. 23, 35 (D.D.C. 1997). The purpose of a *Vaughn* index is "to permit adequate adversary testing of the agency's claimed right to an exemption," and thus must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record." *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 & n.9 (D.C. Cir. 1986).

The Department's Supplemental *Vaughn* index, together with its first *Vaughn* index, addresses all of the documents the Department withheld. In its first *Vaughn* index, the Department addressed 72 documents that the Department withheld in part and 13 documents that the Department withheld in full. *See* Hackett Decl. ¶¶ 63–103; Stein Suppl. Decl.; *see also Davidson*, 206 F. Supp. 3d at 193 (providing a count). In its Supplemental *Vaughn* index, the Department addressed the remaining forty documents, thirty of which were withheld in part and ten of which were withheld in full. *See* Stein Suppl. Decl. ¶¶ 32–53. Taken together, the two *Vaughn* indices submitted by the Department describe a total of 125 documents[9] that the Department withheld, in whole or in part, consistent with the Department's claim. *See* Mot. Summ. J. at 14.

Both *Vaughn* indices adequately describe the records (or portions) withheld and the exemptions justifying their withholding. *See* Hackett Decl. ¶¶ 63–103; Stein Suppl. Decl. ¶¶ 32–

---

[9] The Department determined that one document (C05836852) previously denied in full could be released in part when preparing its *Vaughn* index, *see* Mot. Summ. J. at 14, resulting in a total of 103 documents withheld in part, and 22 documents withheld in full.

53. Each declaration generally describes the length of the document, its classification level, its potential relevance to Mr. Davidson's request, and other information contextualizing the basis for the document's withholding. For example, Defendant's first *Vaughn* index describes Document C05662308 as "a two-page e-mail dated May 22, 2014, that is originally and currently UNCLASSIFIED," and notes that the document "contains an e-mail exchange between Plaintiff and the Department regarding a letter he expected to receive memorializing a conversation of May 14, 2014, and acknowledging a letter dated April 17, 2014." Hackett Decl. ¶ 63. The index goes on to state that disclosing the employee's name in the email could result in unwanted attention for the employee. *Id.* This level of specificity is typical of the Department's first *Vaughn* index. *See* Hackett Decl. ¶¶ 63–103. The Department's second *Vaughn* index is similarly specific. *See* Stein Suppl. Decl. ¶¶ 32–53. For example, the supplemental *Vaughn* index describes Document C05836844 as "a one-page draft letter dated November 3, 2013, from Under Secretary Sherman to Lawrence Davidson," notes that the letter is unclassified, and outlines how the release of such a draft letter could chill the agency's deliberative process. Suppl. Stein. Decl. ¶ 47. Taken together, the two *Vaughn* indices are sufficiently specific "to permit adequate adversary testing of the agency's claimed right to an exemption." *Nat'l Treasury Emps. Union*, 802 F.2d at 527. Thus, the Court will enter summary judgment for Defendant with respect to the adequacy of its *Vaughn* indices.

## C. Privacy Act Withholdings

The Court next addresses the Department's withholdings under Privacy Act Exemption (d)(5). Mr. Davidson does not object to any of the Department's withholdings under Exemption (d)(5). *See generally* Pl.'s Opp'n. Nonetheless, the Court assures itself that summary judgment is

warranted. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016) (holding that a "motion for summary judgment cannot be 'conceded' for want of opposition").

Privacy Act Exemption (d)(5) permits an agency to withhold "information compiled in reasonable anticipation of a civil action or proceeding." 5 U.S.C. § 552a(d)(5). That exemption "unquestionably" protects from disclosure "documents prepared for actions in the district courts." *Martin v. Office of Special Counsel, MSPB*, 819 F.2d 1181, 1188 (D.C. Cir. 1987). The exemption also covers documents prepared for quasi-judicial administrative proceedings, *see id.*, and documents prepared in connection with litigation to which the agency is a potential party or a potential material participant, *see Mobley v. CIA*, 924 F. Supp. 2d 24, 61–62 (D.D.C. 2013). The exemption extends to "the mental impressions of an attorney concerning potential testimony in an anticipated proceeding" to which the agency is not a party. *Id.* at 61.

Many of the Department's withholdings fall squarely within the category of "documents prepared for actions in the district court," and are thus exempt from disclosure. *See Martin*, 819 F.2d at 1188. For example, the Department withheld an exchange between a Department attorney and Department officials relating to a potential lawsuit by Mr. Davidson, and the next steps the Department should take with respect to that lawsuit. *See* Stein Suppl. Decl. ¶¶ 33–36, 42, 50–52. Other withheld documents are internal letters concerning "Department of Justice representation for a DOS employee" and representation of "DOS employees in connection with the Davidson complaint" *See id.* at ¶¶ 37, 38, 41.

Other withholdings include a document containing a discussion between an attorney and Department officials about drafting a letter in response to Mr. Davidson's request for commercial diplomacy and responding to a letter from Mr. Davidson to Under Secretary Sherman. *See id.* at ¶¶ 32, 36, 44–47, 49. The Court held that similar withholdings in the Department's first *Vaughn*

index were appropriate, because the Department was worried about "mak[ing] the Department . . . vulnerable to legal actions" and accordingly discussed how to respond to Mr. Davidson's request. *See Davidson*, 206 F. Supp. 3d at 195 (citing *Davidson v. U.S. Dep't of State*, 113 F. Supp. 3d 183, 186, 192 (D.D.C. 2015)). In short, the Court agrees with the unopposed position of the Department that several documents are exempt from disclosure under Privacy Act Exemption (d)(5). Because there is no genuine dispute of fact, the Court will grant summary judgment with respect to the Department's Privacy Act Exemption (d)(5) withholdings.

### D.  FOIA Withholdings

The Department invokes FOIA Exemptions 5 and 6 for the remainder of its withholdings. *See* Stein Suppl. Decl. ¶¶ 19–29. Although Mr. Davidson seems to only object to the Department's reliance on Exemption 6 withholdings, *see* Pl.'s Opp'n at 2–4, the Court will assure itself that no genuine issue of material fact remains with respect to any withholding. *See Winston & Strawn, LLP*, 843 F.3d at 505. The Court will, however, "treat any unaddressed factual statement in the defendant's motion as undisputed." *Koch v. White*, 12-cv-1934, 2017 WL 1655185, at *4 (D.D.C. May 2, 2017) (internal citations omitted); LCvR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.").

"Disclosure, not secrecy, is FOIA's dominant objective." *Elliott v. U.S. Dep't of Agriculture*, 596 F.3d 842, 845 (D.C. Cir. 2010) (brackets and internal quotation marks omitted) (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "Consistent with this purpose, agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions." *Id.* (citing 5 U.S.C. § 552(b)). "[T]he exemptions are

'explicitly exclusive.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (quoting *Adm'r, FAA v. Robertson*, 422 U.S. 255, 262 (1975)). It is the agency's burden to show that withheld material falls within one of these exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *Elliott*, 596 F.3d at 845.

### 1. Exemption 5

The Department justifies its Exemption 5 withholdings on two broad grounds: (1) the deliberative process privilege, and (2) the attorney–client privilege and attorney work-product doctrine. *See* Stein Suppl. Decl. ¶¶ 32–38, 41, 42, 44–47, 49–52. The Court will first analyze the Department's withholdings based on the deliberative process privilege, then turn to the attorney–client privilege and attorney work-product doctrine.

Exemption 5 permits the withholding of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption protects documents "normally privileged in the civil discovery context." *Judicial Watch, Inc.*, 365 F.3d at 1113. Thus, protected materials under Exemption 5 include materials shielded by the attorney work-product doctrine and "what is sometimes called the 'deliberative process' privilege." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). The deliberative process privilege covers "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Id.* at 8 (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).

For the deliberative process privilege to apply, a court must first determine whether the withheld materials are both "predecisional" and "deliberative." *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991) (internal quotation marks omitted). Materials are

"predecisional" if they are "generated before the adoption of an agency policy." *McKinley v. FDIC*, 744 F. Supp. 2d 128, 138 (D.D.C. 2010) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)). Materials are "deliberative" if they reflect "the give-and-take of the consultative process," *id.* (quoting *Coastal States*, 617 F.2d at 866), "by which the decision itself is made," *Jowett, Inc. v. Dep't of the Navy*, 729 F. Supp. 871, 875 (D.D.C. 1989) (quoting *Vaughn*, 523 F.2d at 1144).

Here, the Department invokes the deliberative process privilege with respect to two types of documents. First, the Department withheld portions of documents discussing proposed responses to Mr. Davidson. *See* Stein Suppl. Decl. ¶ 32 ("discussing drafting of a letter in response to Mr. Davidson's request for commercial advocacy and his references to . . . multiple FOIA requests"); *id.* ¶¶ 46, 47, 49 (describing three documents as "red-line edits and . . . comments" on "a proposed response to [Mr.] Davidson," "a one-page draft letter . . . to [Mr.] Davidson," and a discussion on "the drafting and clearing of a letter to Mr. Davidson"). Second, the Department withheld communications that address the prospect of a lawsuit filed by Mr. Davidson and the potential for "Department of Justice representation for DOS employee[s]." *See* Stein Suppl. Decl. ¶¶ 33–35, 37, 38, 42, 51, 52. These communications often discuss the "next steps to be taken by the Department," and occurred when "Department officials [were] formulating a strategy for official action." *Id.* ¶ 33; *id.* ¶¶ 33–35, 38, 42, 51, 52. The Department's affiant asserts that, with respect to all of the documents withheld under the deliberative process privilege, disclosure would "inhibit candid internal discussion and the expression of recommendations and judgments regarding a preferred course of action," and

"impede the ability of . . . officials to formulate and carry out executive branch programs." [10] *Id.*
¶¶ 32–35, 38, 42, 46, 47, 49, 51, 52; *id.* ¶ 37 (emphasizing attorney-client privilege and attorney
work-product doctrine in its explanation even though the deliberative process privilege was
invoked).

The Court is satisfied that both categories of documents were properly withheld. The
documents relating to proposed responses to Mr. Davidson were, by their nature, "predicisional,"
because they were shared drafts of the Department's proposed response to Mr. Davidson. *See*
Stein Suppl. Decl. ¶¶ 32, 46–49. The documents were also prototypically "deliberative;" they
involved the discussion of drafting a letter to Mr. Davidson and red-line edits of the proposed
response. *See id.* The same logic applies to communications pertaining to potential responses to a
potential lawsuit. Before the agency had made up its mind on how to proceed, it discussed the
prospect of a lawsuit, "next steps," and the potential for employees to be represented by the
Justice Department. These communications were "generated before the adoption of an agency
policy" on the litigation at a time when the Department was actively formulating a litigation
strategy, and thus reflect "the give-and-take of the consultative process." *McKinley*, 744 F. Supp.
2d at 138. Mr. Davidson did not provide a response to the Department's arguments, and the
Court is satisfied that summary judgment in favor of the Department is warranted with respect to
these documents.

Summary judgment is also warranted on issues relating to the Department's invocation of
the attorney work-product doctrine and attorney–client privilege. *See* Stein Suppl. Decl. ¶¶ 36,

---

[10] The Department did not make this statement with respect to Documents C05814470
and C05814475. *See* Stein Suppl. Decl. ¶ 37. Although Defendant's affiant states that the
documents are also exempt under the deliberative process privilege, the attorney–client privilege
and work product doctrine are more directly on point. *See* Stein Suppl. Decl. ¶ 37. Accordingly,
the Court will address these documents in its discussion of those privileges.

37, 41, 44, 45, 50. The attorney work-product doctrine protects "the mental impressions, conclusions, opinions, or legal theories of an attorney," as well as "factual materials prepared in anticipation of litigation." *Tax Analysts*, 117 F.3d at 620 (quotation marks omitted). This rule is rooted in the principle that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v. Taylor*, 329 U.S. 495, 510 (1947). The D.C. Circuit has explained that the proper test considers "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *FTC v. Boehringer Ingelheim Pharms. Inc.*, 778 F.3d 142, 149 (D.C. Cir. 2015) (quoting *United States v. Deloitte LLP*, 610 F.3d 129, 137 (D.C. Cir. 2010)). The agency must establish that the records were created with a "subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable." *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998). Under this test, the agency must do the following to justify its withholding: "(1) provide a description of the nature of and contents of the withheld document, (2) identify the document's author or origin, (3) note the circumstances that surround the document's creation, and (4) provide some indication of the type of litigation for which the document's use is at least foreseeable." *Ellis v. U.S. Dep't of Justice*, 110 F. Supp. 3d 99, 108 (D.D.C. 2015), *aff'd*, No. 15-5198, 2016 WL 3544816 (D.C. Cir. June 13, 2016).

"To qualify for protection from disclosure under the attorney–client privilege, a communication must satisfy each of three criteria: (1) the person to whom the communication was made is a member of the bar of a court (2) who in connection with the communication is acting as a lawyer and (3) the communication was made for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding."

*Nat'l Sec. Counselors v. CIA*, 206 F. Supp. 3d 241, 283–84 (D.D.C. 2016) (internal citations,

quotation marks, and alterations omitted). In the context of a government agency, "the 'client'

may be the agency and the attorney may be an agency lawyer." *Id.* at 284 (quoting *Tax Analysts*,

117 F.3d at 618.

The Department's ten remaining Exemption 5 withholdings fall into two categories. Six

of the withheld documents[11] originated from either "the Department's Office of the Legal

Adviser," Stein Suppl. Decl. ¶ 36, "DOS attorneys," *id.* ¶ 41,[12] or "the Department of Justice,"

*id.* ¶ 50, and contain legal advice on the prospect of a complaint by Mr. Davidson, *id.* ¶ 36, or the

complaint eventually filed by Mr. Davidson, *id.* ¶¶ 41, 50. These documents thus fall squarely

within the scope of both the attorney–client privilege and the attorney work-product doctrine. *See*

*Boehringer Ingelheim Pharms. Inc.*, 778 F.3d at 149; *Nat'l Sec. Counselors*, 206 F. Supp. 3d at

283–84.

The Department's final four documents withheld under Exemption 5 are "internal

Department letters . . . regarding [DOJ] representation for a DOS employee," *see* Stein Suppl.

Decl. ¶ 37, and "coversheet[s] regarding action on a letter from [Mr.] Davidson," *see id.* ¶ 44, 45.

In each of these withholdings, the Department states that it withheld portions of the documents

that were "prepared by or at the direction of an attorney in reasonable anticipation of civil

litigation" and withheld to "protect the attorney's mental impressions, thought processes, and

legal strategies." *See id.* ¶¶ 37, 44, 45. Particularly in light of the context in which these

documents were prepared—potential or ongoing litigation with Mr. Davidson—the Court has no

---

[11] Portions of Documents C05814428, C05814469, C05814473, C05814474, C05814494, and C05837910. *See* Stein Suppl. Decl. ¶¶ 36, 41, 50.

[12] The four documents here concern the "exchanges between DOS officials and DOS attorneys." *See Stein* Suppl. Decl. *¶ 42.*

trouble finding that the documents are exempt from disclosure under the attorney work-product

doctrine. As a result, the Court will enter summary judgment in favor of Defendant with respect

to documents and portions of documents withheld under FOIA Exemption 5.

## 2. Exemption 6

In each of the Department's explanations for withholding in the Supplemental *Vaughn*

index, the Department invokes Exemption 6 to withhold the names and personal contact

information of its employees. *See* Stein Suppl. Decl. ¶¶ 32–53. Defendant invoked the same

exemption in the exact same way in its first *Vaughn* index. *See* Hackett Decl. ¶¶ 63–103. Mr.

Davidson argues that the Department's redactions constitute "evidence of intentional failure to

comply with the F.O.I. statutory authority [sic]." Pl.'s Opp'n at 3. The Court has, on multiple

occasions, rejected Mr. Davidson's argument that the government has acted in bad faith. *See*

*supra* notes 7, 8; *Davidson*, 206 F. Supp. 3d at 201–02. Allegations of bad faith aside, the Court

assesses whether the Department's withholdings under Exemption 6 are justified.

Under Exemption 6, an agency may withhold "personnel and medical files and similar

files" when the disclosure of that information "would constitute a clearly unwarranted invasion

of personal privacy." 5 U.S.C. § 552(b)(6). The Supreme Court has interpreted the term "similar

files" broadly so as "to cover detailed Government records on an individual which can be

identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595,

602 (1982) (internal quotation mark omitted) (quoting H.R. Rep. No. 1497, at 32 (1966)). Not

only does the exemption protect files, "but also bits of personal information, such as names and

addresses, the release of which would 'create a palpable threat to privacy.'" *Prison Legal News*

*v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (alterations and internal quotation marks)

(quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006)). "The information in

the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal." *Milton v. U.S. Dep't of Justice*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. NASA*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)). The names and contact information withheld here meets this standard.

Once the agency meets this threshold determination, a court must next ask whether disclosure would compromise a "substantial" privacy interest, because FOIA requires the release of information "if no significant privacy interest is implicated." *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (brackets and internal quotation marks omitted) (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). This standard, however, "means less than it might seem"—a substantial privacy interest is "anything greater than a *de minimis* privacy interest." *Id.* at 1229–30. And the individuals implicated here indeed have such a privacy interest in their names and contact information. *See Davidson*, 206 F. Supp. 3d at 200 (citing *Prison Legal News*, 787 F.3d at 1147); *see also Multi Ag Media LLC*, 515 F.3d at 1229; *Shurtleff v. EPA*, 991 F. Supp. 2d 1, 18 (D.D.C. 2013).

Because such a substantial privacy interest exists here, the court next tests whether release of such information would be a "clearly unwarranted invasion of personal privacy," *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (internal quotation marks omitted) (quoting 5 U.S.C. § 552(b)(6)), by balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information," *Multi Ag Media*, 515 F.3d at 1228. "The only relevant public interest in the FOIA balancing analysis is the extent to which disclosure of the information sought would 'shed light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their

23

government is up to.'" *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (brackets and internal quotation marks omitted) (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)). "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose . . . ." *Beck v. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

The Court previously decided this issue under nearly identical circumstances with respect to Defendant's first motion for summary judgment. *Compare* Stein Suppl. Decl. ¶¶ 32–53, *with* Hackett Decl. ¶¶ 63–103. As the Court noted in its previous opinion,

> [b]ecause knowledge [of employees' names and contact information] would reveal "little or nothing" more about the Department's conduct than the other information released to Mr. Davidson, . . . and because Mr. Davidson has made no argument asserting a public interest in knowing the employees' names and contact information . . . the Court determines that no public interest exists to justify disclosure of the employees' names and contact information. On that basis, the Court determines that the employees' interest in keeping that information private outweighs any public interest in disclosure, and the Court will grant the Department's motion for summary judgment on the Exemption 6 withholdings that it asserted in its Vaughn Index.

*Davidson*, 206 F. Supp. 3d at 200. Because Defendant makes the same argument supported by nearly identical *Vaughn*-index language and Mr. Davidson has not meaningfully responded or otherwise identified any public interest in the redacted information, the Court will again grant the Department's motion for summary judgment on its Exemption 6 withholdings.

## V.  CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion for summary judgment.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.


Dated:  August 31, 2017                              RUDOLPH CONTRERAS
                                                     United States District Judge